[139] STERLING O. TARPLEY vs. THOMAS H. POAGE'S ADM'R —
Appeal from Victoria County.

Under the act of 1839, on the subject of the plea of "*non est factum*," it was not necessary that the representative of a succession should swear in the same positive terms with one charged in his own right. His affidavit to the best of his knowledge and belief was a sufficient compliance with the statute. [10 Tex. 367; 15 Tex. 297; 20 Tex. 209; 29 Tex. 282.]

Where the warranties in a deed are equivalent to a covenant of seizin in the vendor, the vendee may, before eviction, prove the failure of the vendor's title, as a valid defense to an action for the recovery of the purchase money. In such case, the vendee cannot be compelled to wait until actual eviction, and then resort to an action on the covenants of the deed for redress, more especially when it appears that the vendor is insolvent. [19 Tex. 253, 260, 351.]

It is competent for the jury to determine the fact of marriage from evidence of cohabitation, common repute, acknowledgment of the parties, and other circumstances from which the inference of marriage may be drawn.

When the consideration money is paid by one, and the deed taken in the name of another, a resulting trust arises in favor of the former, and the latter must hold the thing purchased for his use and benefit. [19 Tex. 108.]

This was a suit brought by the appellant, Tarpley, to recover from the administrator of Poage one thousand dollars upon a promissory note, alleged to have been executed by his intestate.

The defendant pleaded the general issue, and specially, that the note was given as the price of one thousand acres of land sold by the plaintiff to Nancy A. Poage, wife of the intestate, by deed with warranty, and that plaintiff had failed to make, and could not make, title to the said land, and that, consequently, the consideration for which said note was given had failed, etc.

The following is, substantially, a statement of the facts as

made out and certified by the judge of the district court, to wit:

"On the trial, the plaintiff offered in evidence the note sued on, and proved the presentation of the same to Thomas Mc-Connell, administrator of Poage, within a year after the decease [140] of the intestate, and the refusal to acknowledge it as a debt against the succession. He proved, also, the presentation to Peter U. Pridham, administrator *de bonis non*, and his refusal to acknowledge it.

"The defendant objected to the note being read in evidence to the jury, on the ground that it was dated 4th March, 1840, whereas the note declared on was described in the petition as bearing date the 11th March, 1840. The court, upon inspection of the note, being of opinion, although difficult to determine from obliteration, that the date was 4th and not 11th of March, decided that the plaintiff must either submit to a nonsuit, or by paying the costs and giving the adverse party a term, if desired, continue his case with leave to amend. The plaintiff chose the latter alternative, and the defendant not desiring a term, the amendment was made and the cause proceeded. The defendant then made 'a motion in the nature of a demurrer to plaintiff's evidence,' because the plaintiff had failed to prove the signature of the defendant's intestate to the note sued on, which the court overruled, and the defendant excepted. The defendant then offered to introduce testimony in defense, to which the plaintiff objected, and the court overruling the objection, the plaintiff excepted. The defendant then called witnesses. James Ingraham testified to a conversation between the plaintiff and defendant's intestate, in which the former spoke of a note of one thousand dollars which he held on the latter, the purchase money of a tract of land, part of a tract known as Carvajal's tract; the intestate expressed fears about the title; the plaintiff said he thought he could make it good in the year; this conversation witness thinks occurred in the spring of 1841, and Poage died in the summer or fall thereafter. Milton H. Hardy testified that he had heard the plaintiff speak of holding Poage's note for land which he had sold him adjoining the town tract of Victoria, the same or part

of the tract known as the Carvajal tract; that Poage made an improvement on the land in the fall of 1839, or [141] early in 1840, and continued to occupy the same except when in town for medical purposes (being in bad health), until August, 1840, when the Comanche Indians took the place, etc.; that Poage never returned to the improvement afterwards. Witness knew Tarpley well, and did not know of his owning any property in the country, except a house and lot in Victoria.

"Asbury James testified that he knew Poage well; heard him speak of his intention to purchase a tract of land adjoining the town tract of Victoria, of the plaintiff; that witness advised Poage not to purchase, because he thought that if the land was not Carvajal's, it was Phil. Demitt's, under an older location than Tarpley's; that afterwards Poage told witness that he had purchased and was satisfied, and soon afterwards made an improvement on the land; that the premises were robbed by the Indians in August, 1840, until which time they were occupied by Poage.

"Henry Kitchen testified that on several occasions he heard Tarpley say that he held Poage's note for one thousand dollars for land lying above Victoria town tract. Witness told Tarpley he did not think he could collect it, because he could not make a title to the land; Tarpley said that in a year he could make a good title; Tarpley told him in 1842 that he was going to the United States; witness understood he had gone, not having heard of or seen him since.

"Daniel McDonald testified that he was sheriff of Victoria county from 1839 to 1842; knew Tarpley well; that he had little or no property; he would not give much for his obligations; does not know that Tarpley has at present any property in Victoria county or the republic; believed he had removed to the United States.

"The defendant then offered to give in evidence a deed of conveyance signed by Tarpley, conveying one thousand acres of land to Nancy A. Poage, adjoining the town tract of Victoria, and warranting title against all persons except Carvajal. The plaintiff objected to the reading of the deed [142] in evidence to the jury, inasmuch as it did not appear from the instru-

ment that Nancy A. Poage, to whom it was executed, was the wife of Thomas H. Poage. The court decided that the deed could be read in evidence upon proof that the grantee was the wife of defendant's intestate. The defendant then called witnesses to prove that fact.

"James Ingraham testified that Poage was generally reputed to be a married man, and that his wife was in Kentucky, but that he did not know her name personally, or from general reputation; he believed her name to be Nancy, from documents sent to him from Green county, Kentucky. The general representation of Poage's being a married man arose, he thought, from his representing himself as such. He had no wife in this country that witness knew of.

"Asbury James had heard Poage speak of his wife's name as Nancy, but did not know it himself personally, or by general reputation.

"James Denison testified that he had heard from persons acquainted with Poage and his wife in Kentucky, that her name was Nancy; has been employed by heirs of Poage, and learned that to be her name by communications from her friends on professional business.

"A. S. Cunningham testified that he believes it was the impression among some of Poage's intimate friends, that his wife's name was Nancy; does not know it from general reputation. The court ruled that sufficient evidence of the fact that Nancy A. Poage was the wife of Thomas H. Poage had not been adduced to prove the privity alleged in the answer. Defendant then asked leave to read the deed in evidence to the jury, as the consideration for which the note sued on was given, and to prove that the consideration had totally failed, by showing from the county surveyor's records and the testimony of the surveyor himself, that the plaintiff claimed the land for which the deed was given by a location and certificate, and that Philip Demitt had made a prior location upon the same land, with good and valid certificates. [143] The defendant at the same time asking leave to amend his answer generally, and particularly, by striking out, wherever they occurred, the words 'wife of Thomas H. Poage;' all of which the court refused,

and to which the defendant excepted. The jury returned a verdict for the defendant, and a judgment thereon being rendered, the plaintiff prayed an appeal to the supreme court."

*F. Jones* and *Robinson*, for appellant.

The objection urged on the trial of this cause, that the signature of Poage was not proved without plea under oath, cannot be sustained. A deed *inter partes* is only available between the parties to it, and it is not competent for a defendant to avail himself of a deed made in favor of a third party, and in which he is not named. Harrison's Dig. vol. 1, 717. But as the defendant failed to produce any proof that Nancy A. Poage was the wife of Thomas H. Poage, the defense wholly failed.

But supposing that the grantee in the deed was the intestate's wife, still the plaintiff would have the right to recover, because, 1st. Poage, in his lifetime, entered into possession of the land; cut timber thereon; improved and lived upon the place, until driven off by the Indians, and in every respect carried out the agreement, and all this with a full knowledge of the character of the claim which he had purchased of Tarpley. Harr. Dig. vol. 3, 1713, 1914, 1907, 1912, and authorities there cited.

2d. Because the covenants, the note and the deed, were independent covenants, upon which each had his remedy. Chit. on Cont. 570; Harr. Dig. 716; 1 Chit. 354; Kent's Com. 472. Being entirely independent covenants, the failure to make title could not be pleaded in bar of an action on the note. Spiller v. Westlake, 2 Barn. & Ald. 155; 1 Harr. Dig. 519, and authorities; 1 Pirtle's Dig. 150; 2 Kent's Com. 470-2, 480.

[144] 3d. Because the only way in which Poage could have cleared himself of the transaction was by a rescission of the sale; and these he must rescind in a reasonable time. All parties must be placed in *statu quo*. Chit. on Cont. 573-4; 1 Harr. Dig. 148; 6 Cow. 13; 7 id. 53.

4th. Because admitting that Nancy A. Poage was the wife of the defendant's intestate, yet it being in proof that her domicile and the domicile of her family, her domicile native and matrimonial, was in Kentucky, from whence it had never been

changed up to the dissolution of the marriage by the death of Poage, and no community of property existing in that state, the deed to her became absolute in her own right, and she might still sue Tarpley upon the covenant made to her. Poage's representatives had no right vested or contingent therein. Story's Confl. 46, 149.

*Webb,* for appellee.

If the plaintiff objected to the verdict, he should have moved for a new trial in the court below. The record discloses no error in any decision of the court against the plaintiff. Indeed every question made in the cause appears to have been decided in his favor. And whatever errors may have been committed, the appellant has no right to complain of them; and as the appellee does not, they are not before this court for consideration.

Had the verdict been against the defendant, he might have urged that it resulted in errors from the decision of the court in permitting the note to go in evidence to the jury, when its execution had not been proved; and in refusing to permit the deed to be given in evidence under the plea of the failure of consideration, unless it were first shown that Nancy A. Poage was the wife of the intestate when it was executed. Prior to the passage of our statute prescribing the requisites of the plea of *non est factum,* the note could not have [145] been given in evidence, even in a suit against the maker, without first proving its execution, and we contend that statute does not change the law as it previously stood in respect to executors and administrators. It would be impossible for them to take the oath prescribed by the statute, and, in most instances, to take any oath which would deny the execution of the note by their testator or intestate. Laws of Texas, vol. 3, p. 103.

Under the plea of failure of consideration, the deed to Mrs. Poage should have been allowed to go in evidence to the jury. It was a matter of no importance whether she were the wife of Poage or not, when it was executed. If the land was the consideration of the note, and that consideration was withheld or had wholly failed, the defendant in a suit on the note might show that failure as well as if the consideration was intended to inure exclusively to his own benefit.

*Howard, contra,* contended:

1st. That some of the evidence introduced by the defendant was clearly incompetent. Such was that of the witness James, as to conversations between himself and Poage, the maker of the note, about the consideration. It was allowing the party to make his own testimony. The evidence of the witness as to outstanding titles, without the production of the locations and other titles, was also incompetent.

2d. That the verdict and judgment were contrary to law. There was no evidence before the jury going to prove a failure of consideration, which could support or authorize their verdict. It had been excluded by the judge, and the regularity of that exclusion is not now before this court. Admitting that a total failure of title or consideration, in connection with the insolvency of the vendor, could be set up as a defense to recovery on the note for the purchase money, yet, in the absence of eviction, the vendee takes upon himself to prove the superior outstanding titles. This must be done by [146] the production of the titles, if they exist, and proof of the failure of the title of the vendor. 2 Hill, N. Y. 105.

In the case at bar there was no competent proof before the jury that the land was the consideration of the note sued on; and if there had been, there was not a particle of written testimony allowed to go to the jury showing a failure of consideration by means of a superior adverse title.

Mr. Chief Justice HEMPHILL delivered the opinion of the court, Mr. Justice WHEELER not sitting.

This action was instituted on a promissory note executed by the defendant's intestate, and the defense was, a failure of consideration. That the note had been given for the purchase money of a tract of land, the title of the plaintiff to which was intrinsically wholly defective, and that there was also a paramount outstanding title in third persons. The verdict being found for appellee, an appeal was taken to this court.

Several questions of considerable interest and importance are suggested by various decisions of the court below in the progress of the cause. These points we will examine to some

extent, though the case is in such an attitude that whatever may be our opinion upon these questions, yet the cause must necessarily be sent down for a new trial, on the ground that the verdict of the jury is without and contrary to evidence.

We see no error in the ruling of the court admitting the note in evidence without proof of the signature. The act on the subject of the plea of *non est factum*, 3 vol. p. 115, was designed to facilitate the recovery on written instruments, and its purpose would, to a considerable extent, be defeated if the representatives of deceased parties were exempted from its operation. From the comprehensiveness of its terms and its evident spirit, it would seem to embrace all cases where the action is founded on an instrument of [147] writing, whether the defendant represents his own or the interest of a person deceased.

The representative of a succession could not be required to swear in the same positive terms with one charged in his own right, and his affidavit to the best of his knowledge and belief should be regarded as a sufficient compliance with the statute.

The grounds of the objection, which was overruled, to the admission of any evidence in support of the defense, are not stated. They were certainly without proper foundation. The answer had averred the total failure of the consideration of the note; the warranties of the conveyance; the worthlessness of the plaintiff's title; his insolvency and absence from the country; and the impossibility of obtaining redress on the covenants in the deed.

Whether, upon these allegations alone, the purchaser would have been entitled in this action for the purchase money, to introduce evidence in support of his defense, or to have proven the existence of a paramount title in third persons, it is not necessary to express any opinion. If the warranties in the deed be regarded as equivalent to a covenant of seizin in the plaintiff, numerous authorities might be adduced to show that a vendee, not being in possession of the land, may, before eviction, prove the failure of the plaintiff's title, as a valid defense in an action for the recovery of the price of the land. Hardin v. Titus, Dall. Dig. p. 622; 1 Bay, 278, 326; 2 id.

558, 2 N. & McC. 186, 189; 2 Const. 159; Harper, 232; 1 Bailey, 217–50–59; 1 Serg. & Rawle, 5 id. p. 204.

If doubt exist as to the admissibility of the defense in the original state of the pleadings, this was removed by the amendments, in which the defendant's nonclaim to the land was averred, and protest was made of the deed for cancellation, or other proper disposition by the court. All the powers appertaining to the chancery jurisdiction could now, if not on the original answer, be exerted for the settlement [148] of the whole matter in controversy, and for the enforcement of mutual justice between the parties. On what ground, then, could proof of the defense set up in the answer be refused? It may possibly have been on the ground (and this supposition receives some countenance from the argument of the appellant in this court) that the defendant had not been judicially ejected from the premises, and that until eviction the defense was unavailable. But why should the defendant be postponed until actual eviction, when redress would very frequently be hopeless?

Where the vendor has impliedly or expressly warranted his authority to sell, and it appear afterwards that his title is intrinsically defective, or there is sufficient evidence of a valid subsisting outstanding title in others, it would operate great injustice to compel the purchaser to pay the purchase money; and then after final eviction consequent on a harassing litigation of the title, to institute a new action on the covenants of the conveyance against the vendor, then perhaps bankrupt, and who in this instance is, as appears from the evidence, already insolvent. The vendee must, by competent and sufficient evidence, establish the existence and validity of the outstanding title; but when that is done, there is no reason why his remedy should be delayed until disturbed in the enjoyment of the land, and this even when the defendant is in possession, for the court has authority adequate to the adjustment of all the matters arising out of the controversy between the parties.

We cannot pass altogether without notice the ruling of the court that the evidence was insufficient to establish the fact

that the grantee named in the deed was the wife of the defendant's intestate. It is true that on a future trial, additional evidence might establish the point more satisfactorily, but we are of the impression that the evidence adduced was such as would have authorized the reading of the deed to the jury.

The facts to be ascertained were, whether Thomas H. [149] Poage was a married man, and whether his wife's name was Nancy. These being ascertained, the jury could, from all the circumstances, determine whether Nancy A. Poage, named in the deed, was the wife of the intestate or not. For the purposes of this suit the marriage was susceptible of proof by evidence of cohabitation, reputation, acknowledgment of parties, reception in the family, and other circumstances from which an inference of marriage could be drawn. Phill. on Ev. Cow. & Hill's notes, 4 Bur. 2057; 4 Johns. 54; 18 id. 346; 1 Nott. & McC. 287; 2 id. 114–15.

The reputation of Poage's being a married man was general in the community where he lived. One of the witnesses testifies that he thought this reputation may have arisen from the deceased's own representation. This is not affirmed positively; and another proves that he had heard from persons acquainted with Poage and his wife in Kentucky that her name was Nancy. The reputation may have arisen from the representation of others, as well as his own.

But there can be no objection to his own acknowledgment of his being a married man, and of the name of his wife. No interest or unworthy motives can be attributed to him in making such declarations. All the circumstances under which they were made strengthen the presumption of their truth, and no possible conceivable advantage could grow out of his acknowledgment of these facts. The reputation was general at the time of making the deed, and the obvious conclusion is, that the plaintiff intended to convey to the wife of the deceased intestate.

We do not positively decide, however, whether the deed should have been received as having been made to the wife of the deceased. It is our impression from the slight examination we have bestowed on the point, that there was sufficient evi-

dence to have permitted the fact of marriage and the name of the wife to have gone with the other facts to the jury; but we forbear the expression of any positive [**150**] opinion, without some argument and further elucidation of the subject.

The court subsequently overruled a motion of the defendant to strike the words "the wife of Thomas H. Poage" out of the answer, and then to offer the deed in evidence to the jury. We have been referred to no authorities by either party for or against this decision, but as the point may be presented on a future trial, we deem it expedient to express an opinion on the question of its correctness; an opinion which will not, however, be entirely conclusive, should the point be again presented for consideration.

The defendant being taken by surprise by the rejection of the deed when offered, as having been made to the wife of the deceased, we see no ground under the then existing laws which would have prevented the making of the amendment attempted by the defendant, and the subsequent introduction of the deed as having been made to a stranger. In the same cause the petition had been amended after the commencement of the trial. And if the Nancy A. Poage named in the deed be neither the wife nor child of the purchaser, she must, from all the circumstances as they appear in the record, be regarded simply as his trustee and holding the land for his use and benefit. It is a well established principle of law, that where the consideration money is paid by one, and the deed taken in the name of another, yet a resulting trust arises in favor of the former, and the latter shall hold the thing purchased for his use and benefit. This doctrine, according to Mr. Justice Story, has its "origin in the natural presumption, in the absence of all rebutting circumstances, that he who supplies the money means the purchase to be for his own benefit, rather than that of another, and that the conveyance in the name of another is a matter of arrangement and convenience between the parties for collateral purposes." 2 Story's Eq. pp. 551–2; Jennings' Eq. Jur. p. 85; 1 Ves. 275; 10 id. 360; 15 id. 350.

[**151**] The purchase by the defendant's intestate having been made for himself (at least all evidence to the contrary being ex·

cluded), we are informed of no principle of law which would, the answer being amended, have prevented the *cestui que trust*, the real owner of the property, for whose use it was purchased and from whose funds payment is now sought, from availing himself of the defense set up in the answer.

. The courts, under our system of jurisprudence for the speedy attainment of justice and the adjudication of controverted rights, are required to try causes by the principles of law or equity, or both, and defenses available in equity can be set up in all actions as a matter of right. In this cause the answer had invoked the exercise of chancery powers in offering the deed for cancellation, and thus removing all pretense of the continued responsibility of the warrantor on the covenants of the deed.

The grantee named, being neither the wife nor child of the purchaser, and coming within none of the exceptions of the general rule, the real intent was in the purchaser himself, and it would be contrary to the first principles of reason and justice, that he should be prevented from protecting this interest when attacked, especially when he offers full equity to the other party, and to save him from all liability growing out of the transaction.

We have barely glanced at this point. To discuss all the questions arising out of the various phases which this convey-ance might assume would require a laborious investigation; nor do we pretend to discuss fully the doctrines involved under its natural aspect, viz.: that of a grant to one with the use, benefit and trust resulting to another.

We are of opinion that the court erred in rejecting the amendment, and that the deed when last offered should have been received and read to the jury.

The principal question, which in the present state of the record is before us for positive adjudication, is, whether there was any evidence before the jury which justified their finding a verdict for the defendant.

On examination of the record, it appears that all attempts on the part of the defendant to introduce what was regarded by him as sufficient proof of his defense were overruled, and

the effect being to exclude essential evidence, without which the verdict cannot be supported, the same must be set aside and the cause remanded for a new trial.

The grounds upon which the jury acted are not material to be considered, for whether their motives were praiseworthy or otherwise, whether founded on their own knowledge of want of consideration or on any other circumstance or inducement extraneous to the evidence before them, yet juries in their action must confine themselves to their proper position, and the rights of parties determined, not capriciously, but according to the established rules of law and evidence. The objection to the verdict is fatal, and the judgment must therefore be reversed. It is urged by the appellee that an objection of this character is now inadmissible, not having been made on a motion for a new trial in the court below.

That such would have been the correct practice has been in more than one case decided by the former supreme court, viz.: Herbert v. The Republic, decided at the December term, 1845; and in the case of Foster and Foster v. Smith, at the last term, it was laid down as a positive rule, that "no judgment ought to be reversed *merely* on the ground that the verdict was not supported by the testimony, unless a motion had been made in the court where the verdict was rendered for a new trial and overruled, and then the evidence and the ground on which the motion had been made should be spread on the record, and that the rule should be applied to all cases to be subsequently decided." This appeal was taken before the adoption of the above as an imperative rule of practice, and will not, therefore, be subjected to its operation. It is one which will be observed in all future cases to which it is applicable; and it is adverted [153] to as well in answer to the appellee as to impress it again on the attention of all whose interests may be affected by its enforcement.

The judgment of the court below is reversed and a new trial is ordered.