**In the Matter of the MARRIAGE OF Katherine A. CASE and Johnie W. Case**

**No. 06–99–00093–CV.**

Court of Appeals of Texas, Texarkana.

Submitted June 29, 2000.

Decided Aug. 25, 2000.

---

James R. Rodgers, The Moore Law Firm, LLP, Paris, for appellant.

Bill Flanary, Paris, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Johnie Case appeals from a trial court decree granting a divorce and ordering the disposition of community property.

On appeal, Johnie contends

1. that there was no evidence or insufficient evidence that the certificate of deposit was community property, and the trial court erred by divesting Johnie of his separate property,

2. that there was no evidence or insufficient evidence that the Talco, Texas, property was community property, and the trial court erred by divesting Johnie of his separate property,

3. that there was no evidence or insufficient evidence that $63,000 of the proceeds of the sale of the marital residence were Katherine Case's separate property and the trial court abused its discretion by making a property division that was not just and right,

4. that the trial court abused its discretion in denying his Motion for Continuance, and

5. that the trial court abused its discretion in denying his Motion for New Trial.

*Certificate of Deposit*

Johnie contends that there was either no evidence or insufficient evidence for the trial court to find that the certificate of deposit (CD) at Lamar National Bank was community property and that the trial court erred in divesting him of his separate property by awarding the CD to Katherine.

■ All property owned or possessed during a marriage or at the time of divorce is presumed to be community property; this presumption is rebuttable by clear and convincing evidence that an asset belongs to the separate estate of one of the spouses. TEX. FAM.CODE ANN. § 3.003 (Vernon 1998). Separate property includes any property owned by a spouse before marriage or acquired by a spouse by gift, devise, or descent during the marriage. TEX. CONST. art. XVI, § 15; TEX. FAM.CODE ANN. § 3.001 (Vernon 1998). The burden is on the spouse claiming something as separate property to trace the asset to prove its separate characterization. *McKinley v. McKinley*, 496 S.W.2d 540, 543 (Tex.1973).

■ When reviewing challenges to the legal sufficiency of the evidence on an adverse finding by a party who had the burden of proof, the appellant must demonstrate that the evidence established that issue as a matter of law. First, the court must examine the record for evidence which tends to support the finding, while disregarding all evidence and inferences to the contrary. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). If there is no evidence to support the finding, then the appellate court must review the entire record to see if the contrary proposition was established as a matter of law. *Id.* In reviewing the legal sufficiency, the evidence presented, viewed in the light most favorable to the prevailing party, must be such as to permit the logical inference reached by the fact finder. *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 24 (Tex.1994).

Johnie did not testify at the hearing. However, if Katherine's testimony proved that any of the contested items were Johnie's separate property, then his burden of proof would be satisfied. Evidence is evidence, no matter who said it.

■ At the hearing, Katherine was asked by her attorney, "Then let's look at the other community assets.... And then there's a certificate of deposit at Lamar National Bank in the sum of [$]12,260.13?," Katherine responded, "Yes, sir. I hope it's there." Viewing the evidence in a light most favorable to the finding, this was evidence that the CD was community property.

■ A trial court's findings of fact are reviewed for factual sufficiency of the evidence under the same legal standards used to review jury verdicts for factual sufficiency determinations. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996). We must weigh all of the evidence in the record and overturn the trial court's findings of fact only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.*

At the hearing, Johnie's attorney cross-examined Katherine about her claim that the CD was community property. The following exchanges took place:

Q. In fact, you have written Mr. Case that you acknowledged that those funds [the CD] came from separate property of his in inheritance from his family?

A. His father passed away and left him some money. My mother passed away and left me some money.

Q. In fact, you wrote down that you know that it was his separate property funds that purchased that CD?

A. He took the money and put it in our names in the bank and said that's the way he was going to handle that part of it.

Q. But now you're claiming that even though he inherited it because it was put in both your names just like the house?

A. Yes. That's correct.

. . . .

Q. But you acknowledge that the funds from that Certificate of Deposit were actually what came from Mr. Case's inheritance from his father?

A. Mr. Case had—Johnie inherited money from his dad. I inherited money from my mother. He took his and put it in a CD. He took mine and spent it and that was my stupidity.

There was only one CD involved in this divorce action. Based on Katherine's testimony, the funds used to purchase the CD were Johnie's separate funds, because the funds were an inheritance. However, Katherine testified also that the CD was taken out in both her and Johnie's names.

■ The general rule in divorce cases is that, when a spouse uses separate proper-ty to acquire property during marriage and takes title to that property in the names of both spouses, a presumption arises that the purchasing spouse intended to make a gift of one half of the separate funds to the other spouse. *Cockerham v. Cockerham*, 527 S.W.2d 162, 168 (Tex. 1975).

The gift presumption was adopted in early Texas jurisprudence to apply to placing the name of a child or wife on a deed. *Smith v. Strahan*, 16 Tex. 314 (1856).[1] In the *Smith* case, the court held that, "the rational foundation for the presumption in favor of the wife is, that the purchase is intended as a provision for her; and this presumption will hold, as will under our systems as others where the right[s] of the wife are not so much favored." If the court is saying that this was a compensation to the wife because at that time her legal rights were very limited, then it should be considered that now the Equal Rights Amendment has been adopted in TEX. CONST. art. I, § 3a, and the laws that denied women various property rights have been changed.

Many of the early cases provide this common-law presumption of gift to purchases of homesteads and real estate. It is now broadened to other types of purchases in which there is a title or named owner of record. However, in 1979 the Nontestamentary Transfers Chapter of the Texas Probate Code was adopted.[2] This chapter of the Probate Code contains specific provisions governing the ownership of joint bank accounts. *See* TEX. PROB.CODE ANN. §§ 438(a), 444 (Vernon 1980), §§ 439(a), (b), 445 (Vernon Supp.2000).

---

**1.** One of the cases relied on in the *Smith* case was *Tarpley v. Poage's Administration*, 2 Tex. 139 (1847). However, the court in that case stated, "It is a well established principle of law, that where the consideration money is paid by one, the deed taken in the name of another, yet, a resulting trust arises in favor of the former, and the latter shall hold the thing purchased for his use and benefit. This doctrine, according to Mr. Justice Story, has its 'origin in the natural presumption, in the absence of all rebutting circumstances, that

he who supplies the money, means the purchase to be for his own benefit, rather than that of another—and that the conveyance in the name of another, is a matter of arrangement and convenience between the parties for collateral purposes.' " *Id.* at 150 (citations omitted).

**2.** This chapter was based primarily on a chapter in the Uniform Probate Code.

The provisions govern the basic ownership and withdrawal rights both during and after the life of a depositor. *See Magee v. Westmoreland,* 693 S.W.2d 612, 615 (Tex. App.-San Antonio 1985, writ ref'd n.r.e.).

The Texas Probate Code defines "account" to mean "a contract of deposit of funds between a depositor and a financial institution, and includes a checking account, savings account, *certificate of deposit,* share account, and other like arrangement." TEX. PROB.CODE ANN. § 436(1) (Vernon 1980). (Emphasis added.) A joint account is defined as an account payable on request to one or more of two or more parties whether or not there is a right to survivorship. TEX. PROB.CODE ANN. § 436.

The Texas Probate Code further provides, "A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." TEX. PROB.CODE ANN. § 438. This statutory provision of the Probate Code has the effect of overriding any common-law gift presumptions on bank accounts. The Probate Code specifically spells out how the ownership of the property is to be determined.

Section 437 of the Texas Probate Code specifically provides, "a multiple-party account created with community funds is subject to Article XVI, Section 15 of the Texas Constitution, and will not in any way alter community property rights." TEX. PROB.CODE ANN. § 437 (Vernon 1980). However, the gift presumption is not a community property right, but rather a separate property presumption.

Applying the Probate Code provisions to the present case, the (CD) was purchased with Johnie's separate property (inherited from his father), and therefore the ownership of the principle in the CD would remain his separate property.

The trial court's finding that the CD was community property is so against the great weight and preponderance of the evidence as to be unjust. The trial court also erred by awarding Katherine the CD, because doing so divested Johnie of his separate property, which a trial court does not have authority to do.

Appellant's point of error one is sustained.

*Talco Property*

Johnie challenges the legal and factual sufficiency of the evidence to support the trial court finding that the land referred to as the Talco property was community property and not his separate property. Johnie contends that the trial court erred in determining a just and right division of the community property, because the Talco property was his separate property and should not have been considered as community property in dividing the marital estate.

The only testimony about the Talco property came from Katherine, who acknowledged on cross-examination that Johnie had inherited the property, making it his separate property.

Q. Mrs. Case, Mr. Case does own some Talco acreage that he inherited; is that correct?

A. Yes, ma'am.

We find that the evidence presented at trial proved that the Talco land was Johnie's separate property as a matter of law. Katherine did state that she wanted the trial court to consider the Talco property because she thought she and Johnie may have purchased a "little extra land." This purchase, if one did occur, does not change the characterization of the Talco property as Johnie's separate property, however. There was no identification of the extra land. The vague references to extra land do not change the characterization of the Talco property. The trial court erred in finding that the Talco property was community property, even if it did award the property to Johnie. The trial

court should not have considered the Talco property in dividing the community estate.

Appellant's point of error two is sustained.

*Marital Residence*

Johnie challenges the legal and factual sufficiency of the evidence to support the trial court's finding that $63,403.39 that resulted from the sale of the marital residence was Katherine's separate property. Johnie also contends that, because of the mischaracterization, the trial court erred in not including those funds in the just and right division of the marital estate.

Katherine requested that the trial court reimburse her for $63,000 that she testified was spent on the marital residence. In the divorce decree, the trial court awarded her all of the funds from the sale of the marital residence ($76,679.38), which were being held in escrow by a title company, but then also ordered that Katherine be "reimbursed" $63,000.00 "which she expended to benefit or enhance the community estate" from the funds held by the title company. In its conclusions of law, the trial court stated that Katherine's separate interest in the funds from the sale of the marital residence was $63,403.39.

■ First, in examining the legal sufficiency of the evidence, Katherine testified that she expended $63,000 of her separate funds in purchasing and improving the marital residence. She acknowledged that $14,000 of the funds used in the purchase were community funds. We find that there was some evidence sufficient to support the trial court's finding that Katherine was due $63,000 in reimbursement.

Next, in reviewing the factual sufficiency of the evidence, we examine all of the evidence, both in favor of and against the trial court finding. At the hearing, Katherine testified that the $63,000 came from two different sources—$40,000 from the sale of a house and $20,000 from the sale of a lake lot and cabin. Because Katherine testified that these separate funds went to purchase or improve different things, we will discuss them separately.

Katherine testified that she owned a house prior to the time of her marriage to Johnie and that they lived in that house for a few years after their marriage. Katherine testified that, after having lived there for a few years, she sold the house and put the proceeds into buying the marital residence. According to Katherine's testimony, she took a cashier's check from the house proceeds and gave it to the title company when purchasing the marital residence.

■ As discussed before, the presumption is that any property acquired during a marriage is community property. However, this presumption can be overcome if the spouse claiming something as separate property can clearly trace the separate funds. The marital residence was purchased during the Cases' marriage and was therefore presumptively community property. However, at the hearing, Katherine testified that $43,000 of the funds used to purchase the marital residence were the proceeds from the sale of a house that she owned prior to her marriage to Johnie, making the funds separate property. The deed to the marital residence was taken in both of the Cases' names.

The marital residence was purchased during the Cases' marriage, making it community property. It was purchased, at least partially, with community funds, and was intended to be the residence for the couple. At the hearing, the following exchange occurred:

[BY MS. HODGKISS:]

Q. So I assume that you intended Mr. Case had a community or interest in the house, a half interest?

[BY KATHERINE:]

A. Yes ma'am. I intended for us to stay married . . . .

The marital residence was community property. Katherine did expend $43,000 of her separate funds to purchase the residence, however.

 As a general rule, when separate funds are expended for normal community living expenses, such as rent, food, etc., there is no right to reimbursement because these merely extinguish the obligation of each spouse to support the family. *See* Tex. Fam.Code Ann. § 2.501 (Vernon 1998); *Cf. Norris v. Vaughan,* 152 Tex. 491, 260 S.W.2d 676, 683 (1953); *In re Long,* 542 S.W.2d 712, 717 (Tex.Civ.App.-Texarkana 1976, no writ). However, using separate funds to purchase community property creates a prima facie right to reimbursement, because the separate estate has been used to enhance the community. *Winkle v. Winkle,* 951 S.W.2d 80, 89 (Tex.App.-Corpus Christi 1997, writ denied); *see also Graham v. Graham,* 836 S.W.2d 308, 309 (Tex.App.-Texarkana 1992, no writ). The use of separate funds in a lump sum to retire community obligations does not constitute a living expense of the community and gives a prima facie right to reimbursement. *Id.* Katherine's testimony created a prima facie right to reimbursement of $43,000 to her separate estate from the community estate.

As for the remaining $20,000 for which Katherine requested reimbursement, Katherine testified that the money was spent on other purchases, but not the marital residence itself. When questioned on cross-examination, Katherine answered that the money "went into tractors. It went into purchasing more land adjoining us. It went into—you know, it just went into ... It didn't go to build on anything to the house." While $20,000 may have originally come from Katherine's separate property, her testimony at trial is too uncertain to establish that the separate funds were expended to purchase or improve the marital residence, entitling her to reimbursement. If Katherine had adequately traced exactly which property her separate funds were used to purchase, she would own those items as her separate property, but would not be due reimbursement for them.

We find that the trial court's determination that the marital residence was community property with Katherine being due a reimbursement of $63,000 is against the great weight and preponderance of the evidence. Katherine adequately traced $43,000 of the funds used to purchase the marital residence to her separate funds and created a prima facie right to reimbursement for that amount. The remaining $20,000, however, did not go toward the purchase or improvement of the marital residence, and therefore cannot be due Katherine as reimbursement.

Appellant's point of error three is sustained.

*Denial of Request for Continuance and Motion for New Trial*

Because of the disposition of the other points of error, we will not address these points of error.

*Harm*

 When a court mischaracterizes separate property as community property, the error requires reversal because a spouse is divested of separate property. *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 140 (Tex.1977). If the mischaracterized property has value that would have affected the trial court's just and right division, then the mischaracterization is harmful and requires the appellate court to remand the entire community estate to the trial court for a just and right division of the properly characterized community property. *McElwee v. McElwee,* 911 S.W.2d 182, 189 (Tex.App.–Houston [1st Dist.] 1995, writ denied).

 The CD was worth $12,260.13. Based on the values given in the trial court's findings of fact, the entire community estate, including the CD, was valued around $315,000. The evidence does not show the value of the Talco property that was mischaracterized. At the time of the final hearing, the residence had been sold for $76,679.38. The court ordered Katherine reimbursed $20,000 that she was not due. These errors involve a combined val-

ue of property that prevented a proper division and thus was harmful.

We sever the portion of the trial court's decree granting a divorce to the parties and affirm that portion of the decree. The portion of the trial court order dividing the community estate is reversed and remanded to the trial court for a just and right division of the community property in accordance with the guidelines set forth in this opinion.