**Teresa WILSON, as next Friend of C.M.W., a Child, Appellant,**

v.

**ESTATE OF Derrick WILLIAMS, Deceased, Appellee.**

**No. 10–02–003–CV.**

Court of Appeals of Texas, Waco.

Jan. 15, 2003.

Rehearing Overruled April 2, 2003.

Richard E. Wakeland, Krebs, Lippman & Wakeland, L.L.P., Houston, Alfred Mackenzie, Haley & Davis, P.C., Waco, for appellant.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

This appeal is from an order that found Derrick Williams to be the father of a child identified as D.W.W. and determined who are Derrick's heirs. To aid in an understanding of the issues, we must first identify in some detail the parties and others who will be discussed in this opinion:

- Derrick Williams ("Derrick")—died intestate, at the age of thirty-seven, on September 3, 1998, after an industrial accident;
- C.M.W.—born on June 10, 1988, and acknowledged by all parties to be Derrick's child and an heir to his estate;
- Teresa Wilson ("Teresa")—C.M.W.'s mother, and a party to the proceedings as next friend for C.M.W.;
- Loretta Seals ("Loretta")—a party to the proceedings in her own right, advancing her claim to be Derrick's surviving spouse at the time of his death and thus an heir to his estate, and as next friend for D.W.W.;
- D.W.W.—born on March 26, 1992, and claimed by Loretta to be Derrick's child and an heir to his estate;

- Marceal Williams ("Marceal")—Derrick's mother;
- Debra Williams ("Debra")—Derrick's twin sister;
- Terry Williams ("Terry")—Derrick's brother;
- Michael Childress—Loretta's former husband; she and Michael were married in 1989; they were married at the time D.W.W. was born, but divorced several weeks later;
- Tyler Seals—Tyler and Loretta entered into a ceremonial marriage in Oklahoma after she and Derrick separated; and
- Charles O. Grigson ("Grigson")—an attorney serving as the temporary administrator of Derrick's estate at the time of trial.

Both Teresa, on behalf of C.M.W., and Loretta, for herself and on behalf of D.W.W., filed applications under the Probate Code to determine heirship. TEX. PROB.CODE ANN. § 48 (Vernon 1980); *Id.* § 49 (Vernon 2003). Loretta also asked the court to establish the parent-child relationship between Derrick and D.W.W. under the Family Code. The disputed part of the probate proceeding was transferred to the District Court of Leon County. *Id.* § 5(b) (Vernon 2003). After a bench trial, the court signed an order that (a) found that Derrick died without a written will, (b) found that Derrick was the father of D.W.W. and that Loretta was his common-law wife at the time of his death, and (c) declared that C.M.W., D.W.W., and Loretta are Derrick's heirs.

Teresa filed a notice of appeal. We will review her four issues as two broad questions: (1) Does the evidence establish that

Loretta had an informal marriage to Derrick, so that the court was justified in finding her to be an heir?; and (2) Does the evidence establish that the parent-child relationship existed between Derrick and D.W.W., so that the court was justified in finding D.W.W. to be an heir? Because we find that Loretta was not barred from proving the existence of her informal marriage to Derrick and that Derrick consented in writing to be named and was named as father on D.W.W.'s birth certificate, we will affirm the order.

## BACKGROUND

In March 1992, Loretta, who was then married to Michael Childress, gave birth to D.W.W. Loretta testified, however, that she had been separated from Michael for more than a year before D.W.W.'s birth, and she had been living with Derrick for most of that time. Although she testified that on one occasion, about nine months prior to D.W.W.'s birth, she had slept with a man whose name she could not recall, she maintained throughout her testimony that Derrick was D.W.W.'s father.

As to the informal marriage, Loretta testified that after her divorce from Michael became final, about five weeks after D.W.W.'s birth, she and Derrick agreed to marry, lived together, and held each other out as husband and wife.[1] In support of this testimony, Loretta also offered her mother's testimony and numerous exhibits, including canceled checks and medical records.

In addition, Loretta offered evidence that Derrick acknowledged D.W.W. as his son: D.W.W.'s birth certificate, which names Derrick as the father; an acknowledgment-of-paternity form signed by Der-

---

1. The statutes regarding informal marriage are codified at TEX. FAM.CODE ANN. §§ 2.401–.405 (Vernon 1998). Informal marriage is the statutory term used to describe what is collo-

quially known as a common-law marriage. We will use these terms interchangeably throughout this opinion.

rick; and her testimony that Derrick chose D.W.W.'s name. There was no evidence from any source that Derrick rescinded or attempted to rescind his acknowledgment of paternity, or that he renounced fathering D.W.W.

In 1994, Loretta moved out of the house she and Derrick shared. Several months later she married Tyler Seals in a ceremonial marriage in Oklahoma. On September 3, 1998, Derrick died after an industrial accident that occurred approximately two weeks earlier.[2]

On February 20, 2001, Loretta was appointed temporary administrator of Derrick's estate. After Marceal intervened, seeking to replace Loretta as temporary administrator, the probate court found that both Loretta and Marceal had conflicts of interest and appointed Charles O. Grigson, an attorney, to serve as temporary administrator of Derrick's estate. The court further ordered each potential heir to file an application for determination of heirship. As we have noted, the district court tried the issues and entered the order appealed from.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The court entered the following Findings of Fact and Conclusions of Law that are applicable to the issues in the appeal:

- Loretta met the appropriate burden of proof to establish her informal marriage to Derrick under section 2.401(2) of the Family Code;
- Even if this proceeding were not commenced by the second anniversary of the date on which Loretta and Derrick separated, Loretta rebutted the presumption created by section 2.401(2)(b) of the Family Code;
- The informal marriage was established after Loretta was divorced from Michael Childress in 1992, was never dissolved by divorce, and was existing at the time of Derrick's death in 1998;
- Loretta's marriage to Tyler Seals was void under section 6.602(a) of the Family Code because of her then-existing marriage to Derrick; any presumption of its validity was rebutted; and that marriage became valid under section 6.202(b) after Derrick's death;
- Loretta is Derrick's surviving spouse and is entitled to rights of inheritance under section 38(b) of the Probate Code;
- Derrick voluntarily executed a Statement of Paternity under section 160.201 of the Family Code; the Statement is valid under sections 160.211 and 160.213 of the Family Code;
- Derrick is a presumed father of D.W.W. under sections 151.002(a)(3)(A) and 151.002(a)(3)(B) of the Family Code; that presumption was not rebutted by the evidence;
- Derrick consented in writing to be named as D.W.W.'s father on the child's birth certificate; he voluntarily signed the birth certificate;
- Derrick is the father of D.W.W. and D.W.W. is Derrick's child for all purposes; the parent-child relationship between Derrick and D.W.W. has been established by the appropriate burden of proof;
- D.W.W. is an heir of Derrick under section 42(b) of the Probate Code, en-

---

2. We note that wrongful death and survivor claims brought by Marceal, C.M.W., and Loretta are currently pending in federal district court. The federal court has stayed its proceedings pending our resolution of this appeal. These claims represent by far the largest potential asset in Derrick's estate.

titled to inheritance rights under section 38(b)(1) of the Probate Code;

- The presumption that Michael Childress is the father of D.W.W. was rebutted by clear and convincing evidence; and
- No person with standing, or any representative with standing, contested with evidence any presumption that Derrick is the father of D.W.W. or produced an express statement denying paternity under section 160.101 of the Family Code.

## CHANGES IN THE LAW

At the outset, we note our approach to the issues is complicated by two factors: first, the succession of changes in the provisions of the Family Code regarding informal marriages which span the time period involving these parties and the changes in how the parent-child relationship is presumed, rebutted, and established; second, the natural propensity of individuals, including those involved in this litigation, not to address legal issues about their relationships until required to do so by external events, such as Derrick's death. The latter consideration makes the former, *i.e.*, what law to apply, more difficult. The trial court's findings and conclusions make clear that it applied the law in effect at the time of trial, as found in both the Probate Code and the Family Code.

## INFORMAL MARRIAGE AND HEIRSHIP

■ Teresa argues in two issues that the trial court erred in declaring Loretta an heir of Derrick and in finding that Loretta was Derrick's common-law spouse at his death. Teresa urges us to apply a former provision of the Family Code that

created a one-year statute of limitations on suits to prove the existence of an informal marriage. Former section 1.91(b) of the Family Code provided: "A proceeding in which a marriage is to be proved under this section must be commenced not later than one year after the date on which the relationship ended or not later than one year after September 1, 1989, whichever is later." Act of May 29, 1989, 71st Leg., ch. 369, § 9, 1989 Tex. Gen. Laws 1458, 1461, *amended by* Act of May 25, 1995, 74th Leg., R.S., ch. 891, § 1, 1995 Tex. Gen. Laws 4404, *repealed by* Act of May 26, 1997, 75th Leg., ch. 7, § 3. As noted, this provision was amended in 1995 and repealed in 1997. The current version of the Family Code, as it has existed since September 1, 1997, provides: "If a proceeding in which a marriage is to be proved as provided by Subsection (a)(2) is not commenced before the second anniversary of the date on which the parties separated and ceased living together, it is rebuttably presumed that the parties did not enter into an agreement to be married." Tex. Fam.Code Ann. § 2.401(b) (Vernon 1998).

This proceeding was commenced in January 2001, nearly four years after § 1.91(b) was repealed. We find that the court properly applied § 2.401(b) as it existed at the time of trial, which created a rebuttable presumption, not a statute of limitations.[3] Teresa rests her entire argument on the proposition that Loretta was barred by the former § 1.91(b) statute of limitations, claiming that as a matter of law she was barred after 1995 (one year after separation) from claiming she was Derrick's common-law wife and, therefore, she can not establish that she is an heir. Teresa's brief states that "because Loretta's common-law marriage claim was time-

**3.** *See Ex parte Abell,* 613 S.W.2d 255, 260 (Tex.1981) ("[No] litigant has a vested right in a statute or rule which … is procedural in nature and which affects no vested substantive right.").

barred under the applicable statute, it is not necessary to challenge the sufficiency of the evidence to support the factual findings related thereto." Because Teresa did not challenge the factual sufficiency, we do not address it. *See Allright, Inc. v. Pearson,* 735 S.W.2d 240, 240 (Tex.1987) ("It is error for a court of appeals to consider unassigned points of error."); *see also Cotton v. Cotton,* 57 S.W.3d 506 (Tex.App.-Waco 2001, no pet.) ("[A]s a general rule, we cannot address unassigned complaints of error.").

Teresa's first and second issues are overruled.

### PATERNITY AND HEIRSHIP

■ In her third and fourth issues, Teresa complains that the court erred by finding that Derrick was D.W.W.'s father and by declaring D.W.W. to be Derrick's heir. These issues are intertwined because without a determination that Derrick was D.W.W.'s father, D.W.W. will be unable to show any entitlement to Derrick's estate.

■ Statutes in force at the time of death govern the disposition of the decedent's estate. *Dickson v. Simpson,* 807 S.W.2d 726, 727 (Tex.1991). On September 3, 1998, the date of Derrick's death, § 42(b) of the Probate Code established that a child is the child of his biological father if one of four conditions was satisfied: (1) the child is born under circumstances described by Family Code § 151.002; (2) the child is adjudicated to be the child of the father by court decree as provided by Family Code Chapter 160; (3) the child was adopted by his father; or (4) the father executed a statement of paternity as provided by Family Code § 160.202. Act of June 20, 1997, 75th Leg., R.S., ch. 1302, § 4 (1997), *amended by* Act of May 25, 2001, 77th Leg., R.S., ch. 821, § 2.18 (2001).

Under the Probate Code, an heir's property rights vest immediately upon the death of a decedent. TEX. PROB.CODE ANN. § 37 (Vernon 2003) ("all the estate of such person, not devised or bequeathed, shall vest immediately in his heirs at law"). Some provisions of the Family Code were revised or repealed after 1998 and before trial. Because a change in the Family Code should not affect the status of a person who was an "heir" of the decedent under then-existing law, we will apply the version of the Family Code that was in effect in 1998 to resolve the issue of parentage, which we will address first. *Dickson,* 807 S.W.2d at 727; *see also Ex parte Abell,* 613 S.W.2d at 260 ("It is well settled in this state that laws may not operate retroactively to deprive or impair vested substantive rights acquired under existing laws, or create new obligations, impose new duties, or adopt new disabilities in respect to transactions or considerations past.").

### *Presumptions of Paternity*

Under § 151.002 of the 1998 version of the Family Code, there are five general presumptions of paternity. Acts 1995, 74th Leg., ch. 20 § 1, *amended by* Acts 1995, 74th Leg., ch. 751, § 22, *amended by* Acts 1999, 76th Leg., ch. 556, § 7, *deleted by* Acts 2001, 77th Leg., ch. 821, § 2.13 (referred to hereafter as § 151.002(a)(1–5)).

A man is presumed to be the biological father of a child if:

(1) he and the child's biological mother are or have been married to each other and the child is born during the marriage or not more than 300 days after the date the marriage terminated by death, annulment, or divorce or by having been declared void;

(2) before the child's birth, he and the child's biological mother attempted to marry each other by a marriage in apparent compliance with law, although the attempted marriage is or could be declared void, and the child is born during the attempted marriage or not more than 300 days after the date the attempted marriage terminated by death, annulment, or divorce or by having been declared void;

(3) after the child's birth, he and the child's biological mother have married or attempted to marry each other by a marriage in apparent compliance with law, although the attempted marriage is or could be declared void or voided by annulment, and;

 (A) he has filed a written acknowledgment of his paternity of the child under Chapter 160;

 (B) he consents in writing to be named and is named as the child's father on the child's birth certificate; or

 (C) he is obligated to support the child under a written voluntary promise or by court order;

(4) without attempting to marry the mother, he consents in writing to be named as the child's father on the child's birth certificate; or

(5) before the child reaches the age of majority, he receives the child into his home and openly holds out the child as his biological child.

*Id.*

Because Loretta's divorce from Michael Childress was finalized only after D.W.W.'s birth, Michael was D.W.W.'s presumed father.[4] *Id.* § 151.002(a)(1). However, Loretta testified that she had been separated from Michael for at least a year before D.W.W. was born,[5] and the court found that she proved she and Derrick informally married after her divorce from Michael. Furthermore, she introduced two documents that evidenced Derrick's acknowledgment of D.W.W. as his son: a birth certificate naming Derrick as D.W.W.'s father, and a preprinted Texas Department of Health acknowledgment-of-paternity form signed by Derrick. Therefore, Derrick is also the presumed father of D.W.W. under the 1998 Family Code. *Id.*

Under the 1998 Family Code, a presumption of paternity under § 151.002 could be rebutted only as provided by section 160.110, which dealt with the presumptions of paternity and the burden of proof. *Id.;* Acts 1995, 74th Leg., ch. 20, § 1, *amended by* Acts 1995, 74th Leg., ch. 751, § 63, *amended by* Acts 1997, 75th Leg., ch. 962, § 2, *amended by* Acts 2001, 77th Leg., ch. 821, § 1.01 and *recodified at* § 160.204. Section 160.110(a) of the 1998 Family Code provided: "In a suit in which there is a presumption of parentage under Chapter 151, the party denying a presumed father's paternity of the child has the burden of rebutting the presumption of paternity by clear and convincing evidence." *Id.* Section 160.110(e) of the 1998 Family Code provided guidance on competing presumptions:

 If two or more presumptions are in conflict, the presumption that is founded on

---

4. The divorce decree, issued on May 8, 1992, recited that no child was born of the marriage. We note that this may not be conclusive of the matter, however, and that the paternity of D.W.W. simply may not have been brought to the attention of the divorce court or may not have been adjudicated. *See*

*In re T.S.S.,* 61 S.W.3d 481, 484–87 (Tex.App.-San Antonio 2001, pet. denied).

5. Her testimony was that she had not had conjugal relations with Michael during the probable time of conception of D.W.W.

the weightier considerations of policy and logic controls. The court shall find that the weightier presumption of paternity is that of a presumed father who is not excluded as the biological father of the child by scientifically accepted paternity testing that shows that at least 99 percent of the male population is excluded.

*Id.*

## Standing to Sue

Section 160.110(g) of the 1998 Family Code identified who had standing to maintain a suit that contests a presumption of paternity. *Id.*

A suit contesting a presumption that a man is the biological father of a child may be filed at any time during the minority of the child by:

(1) the biological mother of the child;

(2) a person related within the second degree of consanguinity to the biological mother of the child, if the biological mother of the child is deceased;

(3) a presumed father; or

(4) a governmental entity, authorized agency, or licensed child-placing agency.

*Id.*[6]

Loretta brought a proceeding to adjudicate the parentage of D.W.W. As his mother, she had standing to challenge the presumption of paternity in favor of Michael Childress. Grigson, the administrator of Derrick's estate, took no position in the adjudication of parentage or in the determination-of-heirship proceedings.[7] Teresa, on C.M.W.'s behalf, did attempt to contest the presumption of paternity in favor of Derrick. However, C.M.W. lacked standing to do so under the 1998 Family Code because it makes no provision for a sibling to contest a presumption of paternity.[8]

## Rebutting the Presumption

Thus, in order for Loretta to "prevail" on her determination-of-parentage claim (for the court to determine that Derrick was D.W.W.'s father), she must have rebutted the presumption that Michael is the father—and have proven facts creating the presumption that Derrick is D.W.W.'s father—by clear and convincing evidence. Acts 1995, 74th Leg., ch. 20, § 1, *amended by* Acts 1995, 74th Leg., ch. 751, § 63, *amended by* Acts 1997, 75th Leg., ch. 962, § 2, *amended by* Acts 2001, 77th Leg., ch. 821, § 1.01 and *recodified at* § 160.204.

## Standard of Review: Clear and Convincing Evidence

Although Teresa does not specifically attack the factual sufficiency of the court's determination of parentage, the arguments in her brief and her assertion that the court erred in its determination that Derrick was D.W.W.'s father cause us to address that issue.[9] Because Loretta's

---

6. Section 160.101 of the 1998 Family Code also specified who may contest the presumption that a man is the biological father of a child under former Chapter 151. Acts 1995, 74th Leg, ch. 20, § 1, *amended by* Acts 1995, 74th Leg., ch. 751, § 62, *amended by* Acts 1997, 75th Leg., ch. 962, § 1, *amended by* Acts 2001, 77th Leg., ch. 821, § 1.01. Although both sections appear to have been amended in the same legislative session, they are not identical with respect to who may maintain such a suit. Because the differing provisions are not relevant to our determination, they are not presented here.

7. Although he would have had standing to maintain a suit to adjudicate parentage, and thus contest the presumption of paternity in favor of Derrick, he did not do so.

8. We are concerned with C.M.W.'s standing because Teresa is representing her.

9. The statement of an issue or point will be treated as covering every subsidiary question that is fairly included. Tex.R.App. P. 38.1(e).

burden of proof at trial was clear and convincing evidence, we use a heightened standard of review on appeal. In 2002, the Texas Supreme Court noted that "[a]s a matter of logic, a finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance." *In re C.H.*, 89 S.W.3d 17, 25 (Tex.2002). Therefore, in the context of this suit to determine parentage we must determine whether the evidence was such that a factfinder could reasonably form a firm belief or conviction about the truth of Loretta's claim that Derrick, not Michael, was D.W.W.'s father.[10] *See id.*

### *Rebutting the Presumption that Michael is D.W.W.'s Father*

Loretta testified that she did not have sexual relations with Michael during the probable time of D.W.W.'s conception. She testified that she did have sexual relations with Derrick during that time, and she also admitted to having had sexual relations one time with a man whose name she could not recall, approximately nine

months prior to D.W.W.'s birth. No other direct evidence was admitted about whether Michael could be D.W.W.'s father.[11] Moreover, in a bench trial the judge, as factfinder, is the sole judge of the credibility of the witnesses and weight to be given their testimony. *Dubree v. Blackwell*, 67 S.W.3d 286, 289 (Tex.App.-Amarillo 2001, no pet.); *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547, 549 (1962). If the judge found Loretta's testimony to be credible, he could have reasonably formed a firm belief or conviction about the truth of her claim that Derrick, not Michael, had fathered D.W.W. *See In re C.H.*, 89 S.W.3d at 25.

### *Presumption that Derrick is the Father*

Under section 151.002(a)(3)(B) of the 1998 Family Code, "a man [was] presumed to be the biological father of a child if after the child's birth, he and the child's biological mother have married or attempted to marry each other by a marriage in apparent compliance with law, although the attempted marriage is or could be declared

---

**10.** Under the current (2001) version of the Family Code, "the paternity of a child having a presumed, acknowledged, or adjudicated father may be disproved *only* by admissible results of genetic testing excluding that man as the father of the child or identifying another man as the father of the child." Tex. Fam.Code Ann. § 160.631 (Vernon 2002) (emphasis added). Under the current version of the Family Code, therefore, we would not be concerned with whether or not a party has rebutted a presumption of paternity by clear and convincing evidence, because that is not a statutorily recognized method to disprove paternity. If the case were to be resolved under the 2001 Family Code, Loretta's action to adjudicate parentage would have the effect of her challenging the presumption of paternity in favor of Michael. (If that presumption were successfully challenged, the presumption of paternity in favor of Derrick would remain. Because no person with standing to challenge that presumption did challenge it, a court could then properly find Derrick to be

D.W.W.'s father.) Michael was not a party to this proceeding. No genetic testing of him was ordered. Loretta did not introduce any results of genetic testing of Michael. Therefore, we would have to conclude that Loretta did not disprove the presumption of paternity in favor Michael. Accordingly, we would find that the court erred in declaring Derrick the father of D.W.W. Thus, the court also would have erred in declaring D.W.W. to be an heir of Derrick.

**11.** The court rejected testimony from Robert Collins, Teresa's expert witness on D.N.A. testing. He testified that based on the results of D.N.A. testing of D.W.W., Loretta, Marceal, Debra, and Terry, he agreed with the finding that there was a zero percent probability that Derrick was D.W.W.'s father. However, he also testified at one point, "So I have not determined the parentage of a child because that is not my job. My job is to find disease causing genes ...."

void or voided by annulment, and he consents in writing to be named and is named as the child's father on the child's birth certificate." Acts 1995, 74th Leg., ch. 20 § 1, *amended by* Acts 1995, 74th Leg., ch. 751, § 22, *amended by* Acts 1999, 76th Leg., ch. 556, § 7, *deleted by* Acts 2001, 77th Leg., ch. 821, § 2.13. Derrick signed a statement of paternity that recited the following: "I, Derrick W. Williams, now residing at P.O. Box 575, Teague, Texas, 75860, acknowledge that I am the father of the following child: [D.W.W.] born 3–26–92 at Navarro, Texas to Loretta Jean Tate and request that I be named as the father of the child on the certificate of birth. I was not married to the mother of the child at the time of conception of the child or at any subsequent time. The child is not the biological child of any other man." It was signed and sworn to on March 27, 1992. Derrick's name appears as the father on the birth certificate. Both the statement of paternity and the birth certificate were admitted into evidence without objection. Based on this evidence the judge could have reasonably formed a firm belief or conviction about the truth of Loretta's claim that Derrick was D.W.W.'s presumed father. *See In re C.H.*, 89 S.W.3d at 25.

### Paternity–Conclusion

Because we have found (a) that Loretta rebutted the presumption that Michael was D.W.W.'s father, (b) that she presented sufficient evidence to create the presumption that Derrick was D.W.W.'s father, and (c) no one with standing rebutted that presumption, we find no fault with the judgment insofar as it found D.W.W. to be Derrick's child. Teresa's third issue is overruled.

### Heirship

 Teresa contends, however, that even if D.W.W. is *presumed* to be Der-

rick's child under the Family Code, he is, nevertheless, precluded from inheriting from Derrick by the plain language of the Probate Code. Section 42(b) of the 1998 Probate Code provided: "Paternal Inheritance. (1) For the purpose of inheritance, a child is the child of his *biological* father if ...." Acts 1955, 54th Leg., ch. 55, *amended by* Acts 1977, 65th Leg., ch. 290, § 1, *amended by* Acts 1979, 66th Leg., ch. 24, § 25, *amended by* Acts 1979, 66th Leg., ch. 713, § 5, *amended by* Acts 1987, 70th Leg., ch. 464, § 1, *amended by* Acts 1989, 71st Leg., ch. 375, § 35, *amended by* Acts 1997, 75th Leg., ch. 165, § 7.54, *amended by* Acts 1997, 75th Leg., ch. 1302, § 4 (Emphasis added). Teresa reasons that in order for D.W.W. to inherit from Derrick, he must prove a biological connection. To that end, Teresa argues that the court erred by excluding a D.N.A. parentage test report, which Teresa claims disproves any biological link between Derrick and D.W.W.

### Preservation of the Complaint

 Preservation of a complaint is a prerequisite for appellate review. TEX. R.APP. P. 33.1(a). Error may be predicated on a ruling that excludes a party's evidence only if the substance of the evidence was made known to the court by offer. TEX.R. EVID. 103; *Ludlow v. DeBerry*, 959 S.W.2d 265, 269–70 (Tex.App.-Houston [14th Dist.] 1997, no writ). The primary purpose of the offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful. GOODE, WELLBORN & SHARLOT, GUIDE TO THE TEXAS RULES OF EVIDENCE, § 103.3 at 21 (2nd ed.1993). A secondary purpose is to permit the trial judge to reconsider his ruling in light of the actual evidence. *Id.* An offer of proof is sufficient if it apprised the court of the substance of the testimony and may be presented in the form of a concise statement.

*Chance v. Chance*, 911 S.W.2d 40, 51–52 (Tex.App.-Beaumont 1995, writ denied). Excluded evidence also may be preserved for appellate review by a post-trial bill of exception. TEX.R.APP. P. 33.2. However, when the substance of the evidence is apparent from the record, a formal offer of proof may not be necessary. TEX.R. EVID. 103(a); *Akin v. Santa Clara Land Co., Ltd.*, 34 S.W.3d 334, 339 (Tex.App.-San Antonio 2000, pet. denied).

Teresa offered the report into evidence twice, and both times the court sustained Loretta's objections and excluded it. Teresa first offered the report during cross-examination of Loretta and again offered it during the testimony of Collins, the expert who testified about D.N.A. testing. Although some of the substance of the report is apparent in the record of Collins's testimony, there was no offer of proof of the report itself.[12] Therefore, Teresa has waived her complaint and the D.N.A. parentage test report is not before this court.[13]

### Biological Father Under the Probate Code

Moreover, we note that we do not read the Probate Code to require proof of a biological link. Rather we interpret section 42(b) as *defining* what a biological father is. Under 42(b) a biological father includes a man who has adopted a child. We do not readily conceive of a situation where a father would adopt a child who is his biological child,[14] especially in light of the procedures in the Family Code that would allow such a man to maintain a suit

to adjudicate his parentage of the child. *See* TEX. FAM.CODE ANN. §§ 160.201–.316 (Vernon 2002). Therefore, we interpret section 42(b) to include all adoptions. Although adopting a child creates a relationship in law, it does not create a relationship in blood. Therefore, we conclude that D.W.W. did not need to establish an actual "biological" link to Derrick to be considered the "child of his biological father" and to be entitled to inherit from him. Derrick satisfied one of the provisions of section 42(b), and the court properly found him to be D.W.W.'s father. Accordingly, we hold that the court did not err in declaring D.W.W. to be an heir of Derrick. Teresa's fourth issue is overruled.

### CONCLUSION

Having overruled each of Teresa's issues, we affirm the order of the district court.

---

**12.** Although a copy of the D.N.A. parentage report is included in the bound reporter's record, our review of the record fails to disclose that Teresa made an offer of proof or post-trial bill of exception of the report itself.

**13.** Subchapter F of Chapter 160 of the 2001 Family Code now provides specific guidance for genetic testing to determine parentage, including the testing of ancestors or collateral

kindred when a putative parent is unavailable for testing. TEX. FAM.CODE ANN. §§ 160.501–.511 (Vernon 2002).

**14.** At oral argument, Teresa argued that in the context of section 42(b) adoption referred only to the situation where a father adopted his own child. We disagree.