

# NUMBER 13-08-00546-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**MARGARET JOSEPHINE DEVLIN-WEINHEIMER,**     **Appellant,**

**v.**

**EDMUND A. WEINHEIMER, JR.,**     **Appellee.**

---

### On appeal from the 329th District Court
### of Wharton County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Chief Justice Valdez

Appellant, Margaret Josephine Devlin-Weinheimer, appeals from the trial court's decree declaring her marriage to appellee, Edmund A. Weinheimer Jr., void. By four issues, Margaret asserts that the evidence is insufficient to support the trial court's order and that the trial court erred by erroneously charging the jury and failing to grant her judgment notwithstanding the verdict or her motion for new trial. We affirm.

## I. BACKGROUND

On October 13, 2005, Edmund filed his original petition for divorce. Margaret timely filed her original answer asserting the affirmative defense of reimbursement; several discovery battles and withdrawals by counsel followed. On March 5, 2007, the Honorable Daniel Richard Sklar, presiding judge of the 329th Judicial District Court of Wharton County, Texas, entered a temporary order striking Margaret's affirmative pleadings for discovery abuse. Judge Sklar retired on April 30, 2007, but on May 1, 2007, he was assigned to the present case. Margaret petitioned this Court for a writ of mandamus. *See In re Weinheimer*, No. 13-07-287-CV, 2007 WL 2128919, at *1 (Tex. App.–Corpus Christi July 26, 2007, orig. proceeding) (mem. op.). On June 13, 2007, we abated the case to permit Judge Neil Caldwell, as successor judge, to reconsider Judge Sklar's prior orders. *See id.* On July 3, 2007, Judge Caldwell affirmed the order striking Margaret's affirmative pleadings.

On May 5, 2008, Edmund filed his third amended petition requesting that the court declare his marriage to Margaret void on the ground that Margaret had a prior and unterminated common law marriage to Edward Richter. Edmund's petition asserted that Margaret and Richter entered into a common law marriage on or about April 14, 1983, and that the marriage had not been "dissolved by divorce or annulment or . . . death." On June 11, 2008, a jury trial was held to determine whether the marriage between Edmund and Margaret was void or could otherwise be dissolved.

### A. Edmund's Evidence

*1. Richter's Testimony*

Richter testified, via videotaped deposition, that, after meeting through a business

2

connection, he and Margaret began a relationship. By April 14, 1983, Margaret and Richter lived together in San Antonio and held themselves out as husband and wife. They filed joint tax returns in 1983 and 1984 and listed Margaret's daughters, who were living with them at the time, as dependents. Richter stated that he and Margaret had joint credit cards and that Margaret told him that they were "common-law married." While living together, Richter and Margaret purchased a "family membership" at Fair Oaks Country Club and a house. Richter testified that the documents involved in the purchase of the house refer to he and Margaret as "Edward C. and wife, Margaret J. Richter." On September 28, 1984, Margaret and Richter deeded their San Antonio home to Millard Smyth. Approximately one year later, on September 16, 1985, Margaret presented Richter with a "separation agreement" when he "ran out of money, and she kicked [him] out." The agreement stated, "[t]his agreement is being prepared in contemplation of a divorce proceeding." Richter testified that the last time he saw Margaret was the day she presented him with the separation agreement. In 1992, Richter filed a petition for divorce and Margaret subsequently filed an answer; however, on August 4, 1994, the divorce proceeding was dismissed for want of prosecution.

During his testimony, Richter was presented with an affidavit signed by Margaret sometime around April 2007. In the affidavit, Margaret states that she "was never personally associated with Mr. Edward Richter," but that Richter had "a relationship with my mother, Margaret J. Finley." Richter denied ever having a relationship with Margaret's mother, noting that he associated with Margaret's mother "only when she would visit us at Christmas." The affidavit also stated that Richter was a "conman" who had "abandoned" his children and engaged in "identity theft." Margaret's affidavit also alleged that Richter "seduced" her minor daughter. Richter denied these allegations.

3

*2. Edmund's Testimony*

Edmund testified that he met Margaret in April 1996, began dating her in May 1996, and that they started living together in late 1997. After they began living together, Edmund met Margaret's adult daughter Jacquelynne; until that time, Edmund was unaware that Margaret had any children. After meeting Jacquelynne, Edmund questioned Margaret about her previous relationships. Edmund testified that in 2000, Margaret told him that she had been married to, and subsequently divorced, William Standley, Robert Devlin, Lewis Milberger, and Edward Richter. In August 2002, Edmund signed a declaration of informal marriage stating that he and Margaret married in October 1996. Edmund filed a petition for divorce in September 2005. In 2006, Edmund discovered that a divorce petition had been filed between Richter and Margaret, but Edmund was not able to locate a divorce decree. Edmund testified that to his knowledge Richter's marriage to Margaret was never terminated.

**B.      Margaret's Evidence**

*1. Lewis Millard Smyth, III's Testimony*

Smyth testified that he met Margaret in New York City in the late 1960s. In the 1970s he and Margaret had a business and social relationship. Smyth stated that, although he had been married to Barbara Smyth since 1959, he and Margaret began living together in 1981 and lived together until around sometime in the mid-nineties.[1] Smyth testified that he and Barbara formally divorced in 1992. Margaret introduced Smyth and Edmund in 1996 or 1997, and they became business partners. On cross-examination, Smyth testified that he does not currently reside with Margaret, but that in the past twelve

---

[1] On cross-examination, Smyth testified that during the time of Margaret's alleged common-law marriage to Richter, Smythe lived with Margaret during the week and with Barbara on the weekends.

months he has given her approximately one hundred fifty to one hundred sixty thousand dollars.

### 2. *Margaret's Testimony*

Margaret testified that she never intended to be married to Richter, never held herself out as being married to Richter, and had not spoken to Richter since September 16, 1985.

## C. Jury Verdict

After hearing the above testimony, the jury returned a verdict finding the marriage between Edmund and Margaret void. The trial court accepted the jury's verdict and rendered a "Decree Declaring Marriage Void." The trial court subsequently denied Margaret's motion for judgment notwithstanding the verdict as well as her motion for new trial. This appeal ensued.

## II. APPLICATION OF SECTION 1.91(b)

Margaret and Edmund disagree over which section of the Texas Family Code is applicable to the current case. Margaret asserts that the one-year statute of limitations required under the 1989 amendment to former section 1.91(b) of the Texas Family Code governs this case; Edmund contends that the two year rebuttable presumption found in section 2.401(b) of the current Texas Family Code governs. *See* Act of May 29, 1989, 71st Leg., R.S., ch 370, § 9, 1989 Tex. Gen. Laws 1458, 1461 (creating a one-year statute of limitation following the end of the parties' relationship to prove the existence of an informal marriage), *amended by* Act of May 24, 1995, 74th Leg., R.S., ch. 891, § 1, 1995 Tex. Gen. Laws 4404, 4404, *repealed by* Act of May 26, 1997, 75th Leg., R.S., ch. 7, § 3, 1997 Tex.

Gen. Laws 8, 43[2]; TEX. FAM. CODE ANN. § 2.401(b) (Vernon 2006) (creating a rebuttable presumption that no agreement to marry exists if a proceeding to prove the existence of an informal marriage is not commenced within two years after the couple ceases living together).

**A.      Development of Texas Law Regarding Informal Marriages**

When Margaret and Richter allegedly entered into an informal marriage,[3] former section 1.91(b) of the Texas Family Code provided that an informal marriage could be "inferred if it [was] proved that [the couple] lived together as husband and wife and represented to others that they were married."  Act of May 31, 1969, 61st Leg., R.S., ch. 888, § 1.91, 1969 Tex. Gen. Laws 2707, 2717, *amended by* Act of May 29, 1989, 71st Leg., R.S., ch. 370, § 9, 1989 Tex. Gen. Laws 1458, 1461.  This section remained in effect when Margaret and Richter's relationship allegedly ended in 1985.  However, in 1989 former section 1.91(b) was amended to state as follows:  "A proceeding in which a marriage is to be proved under this section must be commenced not later than one year after the date on which the relationship ended or not later than one year after September 1, 1989, whichever is later."  Act of May 29, 1989, 71st Leg., R.S., ch 370, § 9, 1989 Tex. Gen. Laws 1458, 1461 (amended 1995, repealed 1997).  This provision "created a one-

---

[2] The constitutionality of former section 1.91(b)'s one-year statute of limitations has been questioned. *See White v. State Farm Mut. Auto Ins. Co.*, 907 F. Supp. 1012, 1017-19 (E.D. Tex. 1995) (concluding that section 1.91(b) is unconstitutional as a violation of the equal protection clause); *but see Dannelley v. Almond*, 827 S.W.2d 582, 583-86 (Tex. App.–Houston [14th Dist.] 1992, no writ) (holding section 1.91(b) does not violate either the open courts provision of the Texas Constitution or the Equal Protection Clause of the U.S. and Texas Constitutions).  In the present case, neither party addresses the constitutionality of the one-year statutory limitation period.  Because our disposition does not require us to determine the constitutionality of former section 1.91(b), we do not address it.  *See* TEX. R. APP. P. 47.1; *see In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003) ("As a rule, we only decide constitutional questions when we cannot resolve issues on nonconstitutional grounds."); *Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex. 1999) (same).

[3] "Informal marriage" is the statutory term used to describe what is colloquially known as a common-law marriage.  *See* TEX. FAM. CODE ANN. § 2.401 (Vernon 2006).  These terms will be used interchangeably throughout this opinion.

year statute of limitations on suits to prove the existence of an informal marriage." *Wilson v. Estate of Williams*, 99 S.W.3d 640, 644 (Tex. App.–Waco 2003, no pet.); *see In re Collins*, 870 S.W.2d 682, 684 (Tex. App.–Amarillo 1994, writ denied) (concluding that former section 1.91(b) is a statute of limitations rather than a jurisdictional requirement).

In 1995, former section 1.91(b) of the family code was amended to abolish the statute of limitations requirement. Act of May 24, 1995, 74th Leg., R.S., ch. 891, § 1, 1995 Tex. Gen. Laws 4404, 4404 (repealed 1997). This provision creates a rebuttable presumption that the parties did not enter into an agreement to be married if a proceeding to prove the informal marriage is not commenced before the second anniversary of the date on which the parties separated and ceased living together. *See* TEX. FAM. CODE ANN. § 2.401(b).[4] The 1995 amendment also provided:

> The change in law made by this Act to Section 1.91, Family Code, does not permit an action to be commenced on or after the effective date of this Act to prove the existence of an informal marriage for which an action was barred before the effective date of this Act for failure to bring the action before the first anniversary of the date the relationship ended.

Act of May 24, 1995, 74th Leg., R.S., ch. 891, § 2, 1995 Tex. Gen. Laws 4404, 4404 (repealed 1997). As noted, section former section 1.91 was repealed in 1997. *Id.* The current version of the family code provides:

> If a proceeding in which a marriage is to be proved as provided by Subsection (a)(2) is not commenced before the second anniversary of the date on which the parties separated and ceased living together, it is rebuttably presumed that the parties did not enter into an agreement to be married.

---

[4] The 1995 amendment provided:

If a proceeding in which a marriage is to be proved [as an informal marriage] is not commenced before the second anniversary of the date on which the parties separated and ceased living together, it is rebuttably presumed that the parties did not enter into an agreement to be married.

Act of May 24, 1995, 74th Leg., R.S., ch. 891, § 1, 1995 Tex. Gen. Laws 4404, 4404 (repealed 1997).

TEX. FAM. CODE ANN. § 2.401(b).

Margaret argues that "under [former section] 1.91(b) no common law marriage exists where the parties agreed to be married, cohabitated as man and wife, and hold [sic] themselves out as man and wife if no efforts are made to prove the informal marriage within one year after the relationship ceased to exist." Edmund argues that former section 1.91(b) is a repealed provision of the family code and does not apply to this case.

Our sister courts are split on whether former section 1.91(b)'s one-year statute of limitation applies in proceedings commenced on or after September 1, 1995. *See Wilson*, 99 S.W.3d at 644 (concluding that the trial court properly applied the rebuttable presumption of section 2.401(b) instead of former section 1.91(b)'s statute of limitations where a proceeding in which an alleged informal marriage was to be proved commenced in January 2001, even though the relationship upon which the informal marriage was premised had ended in 1994); *but see Lavely v. Heafner*, 976 S.W.2d 896, 898-99 (Tex. App.–Houston [14th Dist.] 1998, no pet.) (vacating trial court's declaratory judgment that an informal marriage never existed where a proceeding to establish the existence of the informal marriage was not filed until March 1996, outside of former section 1.91(b)'s one-year statute of limitations); *see also Lopez v. Trevino*, No. 04-03-00352-CV, 2004 WL 1054733, at **1-2 (Tex. App.–San Antonio May 12, 2004, no pet.) (mem. op.) (holding that appellant was barred by former section 1.91(b)'s one-year statute of limitations from proving that appellee was appellant's mother's common law husband).

For reasons discussed below, we need not address the issue of whether former section 1.91(b)'s one-year statute of limitation applies in proceedings commenced on or after September 1, 1995.

8

**B.    Statute of Limitations**

Edmund argues that, even assuming former section 1.91(b) applies to the present case, Margaret has waived her right to rely upon it.  We agree.  Margaret asserts that Edmund's waiver argument "misses the point" because he has the burden to prove that his marriage to her is void.  Margaret argues that by failing to offer proof that someone commenced a proceeding before September 1, 1990 in which an informal marriage between Margaret and Richter was to be proven, Edmund failed to meet his burden.  Although Margaret does not argue that Edmund should have brought the present action within one year after the enactment of the 1989 amendment to former section 1.91(b), her argument nonetheless uses a statute of limitations defense to thwart Edmund's attempt to prove his marriage void.

Assuming without deciding that the application of former section 1.91(b) is appropriate, we conclude that because Margaret failed to plead the affirmative defense of limitations, she  has waived any right to rely on former section 1.91(b).  *See In re Collins*, 870 S.W.2d at 684-85 (concluding that former section 1.91(b)'s one-year statute of limitations is an affirmative defense to a claim that an informal marriage existed).  Limitations is an affirmative defense that, in the absence of trial by consent, is waived if not pleaded.  *Tuttlebee v. Tuttlebee*, 702 S.W.2d 253, 256 (Tex. App.–Corpus Christi 1985, no writ); *see* TEX. R. CIV. P. 94 (listing statute of limitations as an affirmative defense a party "shall set forth affirmatively").  Margaret concedes that she did not plead statute of limitations as an affirmative defense and that she was "prohibited from presenting any affirmative defenses at trial" as a result of sanctions by the court.[5]  Because Margaret first raised the issue of limitations at the hearing on her motion for new trial, she failed to timely

---

[5] On appeal, Margaret does not contest the sanctions imposed by the trial court.

raise the defense. *See Hollingsworth v. Hollingsworth*, 274 S.W.3d 811, 815 (Tex. App.–Dallas 2008, no pet.) (citing *Wynn v. Wynn*, 587 S.W.2d 790, 792 (Tex. Civ. App.–Corpus Christi 1979, no writ)).

Because we conclude that Margaret failed to plead the affirmative defense of limitations, we need not address whether former section 1.91(b) or section 2.41(b) is applicable. Because all of Margaret's issues on appeal are premised on former section 1.91(b), we overrule each to the extent that it relies on former section 1.91(b). Margaret's third issue—that the trial court erred by failing to grant her motion for a judgment notwithstanding the verdict—and her fourth issue—that the trial court erred by failing to grant her motion for new trial—are based entirely on the applicability of former section 1.91(b); accordingly, we overrule Margaret's third and fourth issues.

In her second issue, Margaret argues that the trial court erred by entering a decree declaring Edmund's marriage to Margaret void because (1) the evidence is legally insufficient to support the decree given that "there is no evidence to support a finding that there was proof of a prior marriage within one year after the time the marital relationship ceased to exist as required under Texas Family Code section 1.91(b)"; and (2) "[t]he evidence was factually insufficient since there was no evidence offered to show the alleged prior relationship between Margaret and Richter was 'proven' within one year after the date it ceased to exist . . . ." Because this issue relies solely on the applicability of former section 1.91(b), Margaret's second issue is also overruled.

### III. JURY CHARGE

In her first issue, Margaret contends that the court abused its discretion by failing to submit her requested questions to the jury.

10

## A.    Standard of Review and Applicable Law

We review a jury charge under an abuse of discretion standard. *R & R Contractors v. Torres*, 88 S.W.3d 685, 696 (Tex. App.–Corpus Christi 2002, no pet.) (citing *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000)).  An abuse of discretion occurs when the trial judge acts "without reference to any guiding principles." *DeLeon v. Pickens*, 933 S.W.2d 286, 290 (Tex. App.–Corpus Christi 1996, writ denied) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex.1985)).  To preserve error regarding a court's failure to submit a proposed jury instruction, the proposed instruction must have been tendered to the trial court in substantially correct wording. *See* TEX. R. CIV. P. 278; *Placencio v. Allied Indus. Int'l*, 724 S.W.2d 20, 21 (Tex.1987).  "[S]ubstantially correct . . . does not mean that it must be absolutely correct, nor does it mean one that is merely sufficient to call the matter to the attention of the court will suffice.  It means one that in substance and in the main is correct . . . ." *Placencio*, 724 S.W.2d at 21 (citing *Modica v. Howard*, 161 S.W.2d 1093, 1094 (Tex. Civ. App.–Beaumont 1942, no writ)).

## B.    Analysis

The jury was charged as follows:  "Is the marriage between Edmund A. Weinheimer and Margaret Devlin-Weinheimer void?  Answer yes or no."  Section 6.202(a) of the family code provides that "[a] marriage is void if entered into when either party has an existing marriage to another person that has not been dissolved by legal action or terminated by the death of the other spouse." TEX. FAM. CODE ANN. § 6.202(a) (Vernon 2006).  Margaret argues that Edmund's burden to prove his marriage to Margaret void "is bifurcated into at least two (2) distinct categories under [former section] 1.91(b)."  She describes the first "category" as involving the issue of whether Margaret and Richter were informally married,

11

and the second "category" as involving the issue of whether a marriage was proven within one year after Margaret and Richter's relationship ended. Because we have already held that Margaret waived her right to a limitations defense, former section 1.91(b)'s statute of limitations was not in issue; therefore, the trial court did not abuse its discretion by refusing to submit questions related to Margaret's proposed second category. *See* TEX. R. CIV. P. 278. Accordingly, we look only to the remaining questions proposed by Margaret as they relate to the issue of informal marriage. Margaret proposed the following questions:

Did Margaret D. Weinheimer and Edward C. Richter live together?

. . . .

Did Margaret D. Weinheimer and Edward C. Richter hold themselves out as husband and wife?

The Texas Family Code requires three elements that must be proven in order to find an informal marriage—agreement, holding out, and cohabitation. *See* TEX. FAM. CODE ANN. § 2.401(a)(2). Margaret's proposed questions are incomplete because they omit the agreement requirement. *See id.* By failing to include the agreement requirement, Margaret left out an essential element of informal marriage and failed to tender the jury instruction in substantially correct wording. *See Tex. Commerce Bank Reagan v. Lebco Constructors, Inc.*, 865 S.W.2d 68, 76 (Tex. App.–Corpus Christi 1993, writ denied) (holding that tender of an instruction that misstates the law is not in substantially correct form), *overruled on other grounds by Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 530 (Tex. 1998); *see also King v. Bank of N.Y.*, No. 13-07-069-CV, 2008 WL 2764523, at *6 (Tex. App.–Corpus Christi July 17, 2008, no pet.) (mem. op.) (concluding that appellant's proposed instruction was substantively incorrect where appellant failed to include an essential element). Because Margaret failed to tender her

12

issue in substantially correct wording, she failed to preserve error. *See Lebco Constructors, Inc.*, 865 S.W.2d at 76; *see also King*, 2008 WL 2764523, at *6. Margaret's first issue is overruled.

## IV. Conclusion

Having overruled all of Margaret's issues, we affirm the trial court's judgment.

_____

_____

ROGELIO VALDEZ
Chief Justice

Delivered and filed
the 3rd day of December, 2009.